UNITED STATES of America, Appellant,

v.

**Louis Anthony GARY, M.D., Appellee.**

No. 90–2879.

United States Court of Appeals,
Eighth Circuit.

Submitted Nov. 1, 1991.

Decided April 29, 1992.

Rehearing and Rehearing En Banc
Denied July 6, 1992.

---

Robert D. Kamenshine, Washington, D.C., argued, (William Kanter, on the brief), for appellant.

Nelson L. Mitten, St. Louis, Mo., argued, for appellee.

Before LAY,* Chief Judge, BRIGHT and HENLEY, Senior Circuit Judges.

LAY, Chief Judge.

This case involves a breach of contract by a participating physician in the National Health Service Corps Scholarship Program, set forth at 42 U.S.C. §§ 254*l*–254*o* (1988). The United States appeals (1) the district court's denial of its motion for summary judgment seeking damages under 42 U.S.C. § 254*o* from the defaulting physician, Louis Anthony Gary, and (2) the district court's grant of summary judgment in favor of Dr. Gary, holding that the Secretary of Health and Human Services violated the Administrative Procedure Act (APA) by refusing to permit him to pay off his existing debt through service in a medically underserved area of St. Louis, Missouri. We vacate the district court's grant of summary judgment in favor of Dr. Gary. We also vacate the denial of the government's motion for summary judgment and remand the same for further consideration. If there exists no material issue of genuine fact and the United States has set forth sufficient undisputed evidence as to the amount owed by reason of defendant's default, summary judgment should be entered accordingly in favor of the United States.

I. BACKGROUND

In 1975, after his first year at the University of Minnesota medical school, Gary applied for and received a National Health Service Corps (NHSC) Scholarship Training Program award. Through this program, the government agreed to pay for Gary's remaining three years of medical school in return for his commitment to serve three years in the NHSC or as a commissioned officer in the Public Health Service, providing medical care to underserved areas. The scholarship contract provided that if Gary failed to begin or complete his service obligation, this breach would obligate him to pay the government an amount equal to the actual scholarship award plus interest at the maximum legal prevailing rate.

After graduating from medical school, Dr. Gary received a deferment of his service obligation to pursue a family practice residency program. In 1979, toward the end of his residency, the government notified Gary of his placement in the Indian Health Service. He rejected this assignment and asked to be sent information regarding payback procedures. Following the completion of his residency program, however, Gary requested that he be permitted to satisfy his service obligation through service in two private practices in St. Louis pursuant to 42 U.S.C. § 254n. The Secretary approved this request, and Dr. Gary signed a contract agreeing to serve at those private practices from September of 1981 through August of 1984.

Four months later, Dr. Gary closed one of the practices because he found it did not produce sufficient income.[1] In compliance with the private practice agreement, the Secretary offered Dr. Gary an alternative service placement in Wyoming which he rejected. In March of 1982, Gary was declared in breach, and collection efforts commenced. After those efforts failed, this action was initiated in March, 1987.

In 1988, under the newly enacted Special Repayment Program,[2] Dr. Gary was offered another opportunity to serve out his obligation rather than pay off his debt. Gary opted to serve his remaining obligation in a site on the Secretary's Health Manpower Shortage Area Placement Opportunity List (HPOL). In order to qualify

---

* The HONORABLE DONALD P. LAY was Chief Judge of the United States Court of Appeals for the Eighth Circuit at the time this case was submitted and took senior status on January 7, 1992, before the opinion was filed.

1. He continued to serve part-time at the other practice until March of 1983 when the center ceased offering part-time employment.

2. Congress enacted the Special Repayment Program in 1987. Pub.L. No. 177, § 204, 101 Stat. 987, 1000–03 (1987) (implementing regulations at 42 C.F.R. §§ 62.71–76).

for this option, however, Gary had to provide written documentation of an offer of employment from a HPOL site and his acceptance of that offer by February 15, 1989. *See* 42 C.F.R. 62.73(d) (1991). Dr. Gary did not notify the Secretary of his receipt and acceptance of an offer from the St. Louis Comprehensive Neighborhood Health Center until April 27, 1989, over two months after the deadline for approval of such an arrangement under the Special Repayment Program. The Center was also not listed on the HPOL.

In June, 1989, the government offered to settle with Dr. Gary if he would enter into a consent judgment for the full amount owed and serve out his obligation in Grandview, Washington at the Yakima Farm Workers Clinic. Gary rejected this offer.

The district court, entertaining cross motions for summary judgment, held the Secretary's denial of Dr. Gary's request to serve in St. Louis to be arbitrary and unreasonable. The court also found that Gary must be credited for the time he served in private practice, totalling 153 full days.

## II. DISCUSSION

The government urges that we are without jurisdiction to hear Dr. Gary's claim. It argues that decisions to offer and reject terms under which it would cease valid enforcement proceedings against a defaulting physician are nonreviewable under 5 U.S.C. § 701(a)(2) (1988), as discretionary agency actions. The district court held, however, that the Secretary's refusal to allow Dr. Gary to complete his time in St.

Louis was "arbitrary and capricious and constituted an abuse of discretion." *United States v. Gary*, No. 87–427C(4) (E.D.Mo. Aug. 31, 1990); *see also* 5 U.S.C.A. § 704 (1988).

Dr. Gary defaulted on his statutory and contractual duties in 1979, when he declined to serve in the Indian Health Service, and again in 1982, when he declined the Secretary's offer to serve out his remaining obligation in Wyoming. According to Gary's scholarship program contract, once a participating physician breaches his contractual duties "the United States is entitled to recover" all amounts due. *See also* 42 U.S.C. § 254o (upon breach, "the United States shall be entitled to recover from the individual [amounts due].").[3] Defaulting physicians have neither contractual nor statutory rights to serve out their obligation after default.[4] *United States v. Fowler*, 659 F.Supp. 624 (N.D.Cal.1987), *aff'd*, 849 F.2d 1476 (9th Cir.1988); *United States v. Redovan*, 656 F.Supp. 121 (E.D.Pa.1986), *aff'd*, 826 F.2d 1057 (3d Cir. 1987). To the extent the Secretary might permit such service in lieu of the financial restitution to which it is entitled, such action appears to be wholly at the discretion of the Secretary.[5]

Section 701(a)(2) provides that judicial review is unavailable to the extent that "agency action is committed to agency discretion by law." This section has been said to present "[t]he most troublesome problem about determining availability of review under the APA...." 5 Kenneth C. Davis, *Administrative Law Treatise* 274

3. Although Congress amended the formula for determining the amounts due upon default in 1977, the relevant "shall be entitled to recover" language remained unchanged.

4. While it is true that Congress provided certain defaulting physicians with a service option under the Special Repayment Program, Dr. Gary did not meet two important requirements for entry into this program. He did not match to a site by February 15, 1989, and he did not match to a site listed on the HPOL.

5. The district court's consideration of certain placement factors listed in 42 U.S.C. § 254f (1988) was misguided. Those factors are only significant for the placement of non-defaulting

NHSC participants. While this court understands that Dr. Gary and his family are deeply entrenched in the St. Louis area, and that Gary is genuinely devoted to providing services to that city's medically underserved population, he lost the right to have those factors considered when he defaulted on his service obligation. The district court also erred in considering the fact that Dr. Gary would be replacing a NHSC member at the St. Louis site. That factor is relevant only when the defaulting physician is attempting to match to a permitted site under the Special Repayment Program. As discussed above, Gary failed to qualify for participation in that program.

(2d ed.1984). It is clear, for instance, that although section 701(a)(2) prohibits judicial review of action committed to agency discretion by law, some acts of discretion may be reviewed under an abuse of discretion standard. *See* 5 U.S.C. § 706(2)(A) (1988) (courts must "hold unlawful and set aside agency action, findings, and conclusions found to be ... an abuse of discretion....").[6]

■ The government directs this court to *Heckler v. Chaney*, 470 U.S. 821, 105 S.Ct. 1649, 84 L.Ed.2d 714 (1985), wherein the Supreme Court held unreviewable the Food and Drug Administration's decision not to enforce certain provisions of the Federal Food, Drug and Cosmetic Act, 21 U.S.C. §§ 301–394 (1988). Writing for the Court, Chief Justice Rehnquist stated that an agency's refusal to take enforcement steps "is a decision generally committed to an agency's absolute discretion. This recognition of the existence of discretion is attributable in no small part to the general unsuitability for judicial review of agency decisions to refuse enforcement." 470 U.S. at 831, 105 S.Ct. at 1655 (citations omitted). Elaborating on the factors which make enforcement decisions unsuitable for review, the Court noted the agency's need to balance a number of variables including the allocation of resources and the agency's overall policy goals. *Id.* The Court further drew an analogy between the unreviewable discretion of a criminal prosecutor and an agency's enforcement decisions. *Id.* at 832, 105 S.Ct. at 1656.

*Heckler* is not directly on point, as it was a failure to enforce case. The government's argument, however, is that if the Secretary has unreviewable discretion to enforce or not enforce violations of the National Health Service Act, he must also

have the power to determine the terms under which he might choose not to enforce the Department's statutory and contractual rights. While we decline to make a broad holding that all decisions of the Secretary under the National Health Service Act are unreviewable, we nevertheless find that the Secretary's denial of Dr. Gary's request to serve in St. Louis is unreviewable as committed to agency discretion by law.

■ When Dr. Gary defaulted, the United States had an immediate right to recovery of the scholarship award plus interest. In the course of litigation to secure the repayment to which the government was entitled, Gary proposed service at a certain St. Louis site. This offer was deficient in several respects for qualification under the Special Repayment Program. Significant here is the fact that the site was not on the HPOL list. We find that in these circumstances, judicial review is inappropriate. We further find that even if review were available, the Secretary's actions were neither arbitrary, capricious, nor an abuse of discretion.

The HPOL "identifies those HMSA's with the greatest need for health care professionals...." *Rendleman v. Bowen*, 860 F.2d 1537, 1543 (9th Cir.1988). Thus, the fact that the St. Louis site at which Dr. Gary sought to serve was not on the HPOL precluded him from satisfying his obligation there when other areas, such as Grandview, Washington, had higher priority. But perhaps more important is that the record shows Dr. Gary did not offer to complete his service in St. Louis until over two years after an action was brought to enforce his default.[7] There is nothing in the statute which provides a NHSC scholar-

---

**6.** In order to determine when an act of agency discretion may be reviewed, Professor Davis suggests that courts as a practical matter should examine the particular context of each case, including the relevant statute and common law, to determine whether an agency's discretion is "so far committed as to be unreviewable." 5 Davis, *Administrative Law Treatise* at 276; *see also* Harvey Saferstein, *Nonreviewability: A Functional Analysis of "Committed to Agency Discretion"*, 82 Harv.L.Rev. 367, 368 (1968) ("the doctrine 'committed to agency discretion' ... is

essentially a catchall label for a judicial conclusion, often reached in the process of statutory interpretation, that on practical and policy grounds an agency determination should not be subject to direct review.").

**7.** The government initiated this action in March of 1987. Gary's offer of service at the St. Louis Comprehensive Neighborhood Health Center was made in April of 1989.

ship recipient the right to dictate to the Secretary where he will serve.

■ Dr. Gary does not dispute that the government's offer to settle and the terms under which it would agree to relieve Gary of his default were clearly discretionary. Rather, Gary argues that the "final agency action" involved in this suit, in both the district court and on this appeal, is the government's failure to place him at the St. Louis facility. Even if Gary were correct that our focus should be on his offer and not that of the government, we find that the Secretary's rejection of his offer of service was not a "final agency action" subject to judicial review under 5 U.S.C. § 704 (1988).

In *FTC v. Standard Oil Co.*, 449 U.S. 232, 101 S.Ct. 488, 66 L.Ed.2d 416 (1980), the Court discussed several indicia of finality, including (1) that the challenged action be a " 'definitive' statement[ ] of the [agency's] position"; (2) that the action have a "direct and immediate ... effect on the day-to-day business" of the plaintiff; (3) that the action have "the status of law;" and (4) that "immediate compliance ... was expected." *Id.* at 239–40, 101 S.Ct. at 493 (quoting *Abbott Laboratories v. Gardner*, 387 U.S. 136, 151–52, 87 S.Ct. 1507, 1517, 18 L.Ed.2d 681 (1967)); *see also Getty Oil Co. v. Andrus*, 607 F.2d 253, 256 (9th Cir. 1979) ("It is the imposition of an obligation or the fixing of a legal relationship that is the indicium of finality of the administrative process.").

Application of these indicia to the present case makes clear that the Secretary's rejection of Dr. Gary's offer wholly fails to satisfy the finality requirement of section 704. Once he defaulted and failed to qualify for the Special Repayment Program, Gary had no statutory right to have his offer of service considered or accepted by the Secretary. The Secretary's rejection of his offer did not in any way impose or establish a new legal relationship between the Public Health Service and Gary. Following the agency's rejection, Dr. Gary's position was precisely the same. He was still many years in default of his NHSC obligations and defending against the government's action to recover its statutory damages for that default.

■ Dr. Gary alternatively seeks credit for the time he served in qualifying private practices from 1981 to 1983. As the government points out, however, there is no statutory entitlement to such credit where a suit is brought for damages upon default. *See United States v. Barry*, 904 F.2d 29, 31 (11th Cir.1990) ("The district court correctly decided that this statute as written did not provide for proration.").

We vacate the district court's grant of summary judgment in favor of Dr. Gary. We also vacate the denial of the government's motion for summary judgment and remand the same for further consideration.