# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 98-1420

_____

Owner-Operator Independent Drivers    *
Association, Inc., et al., individually    *
and on behalf of all others similarly    *
situated,    *
   *
   *   Appeal from the United States
Plaintiffs - Appellants,    *   District Court for the
   *   Western District of Missouri.
v.    *
   *
New Prime, Inc., et al.,    *
   *
Defendants - Appellees.    *

_____

No. 98-2942
No. 98-3143

_____

New Prime, Inc., et al.,    *
   *
Petitioners,    *
   *
   *   Petitions for Review of
v.    *   an Order of the Federal
   *   Highway Administration.
United States of America, Federal    *
Highway Administration, et al.,    *
   *
Respondents,    *

_____

No. 98-3478
_____

Arctic Express, Inc., et al.,         *
                                            *

     Petitioners,             *
                                            *

     v.                   *
                                          *

Federal Highway Administration, et al.,  *
                                          *

     Respondents.          *
_____

Submitted:  April 23, 1999

Filed: August 10, 1999
_____

Before WOLLMAN[*] and LOKEN, Circuit Judges, and JACKSON,[**] District Judge.
_____

LOKEN, Circuit Judge.

The ICC Termination Act of 1995[1] transferred the motor carrier regulatory functions of the Interstate Commerce Commission to the Department of Transportation and the Surface Transportation Board.  See 49 U.S.C. § 13501.  Within DOT, the

_____

[*]The HONORABLE ROGER L. WOLLMAN became Chief Judge of the United States Court of Appeals for the Eighth Circuit on April 24, 1999.

[**]The HONORABLE CAROL E. JACKSON, United States District Judge for the  Eastern District of Missouri, sitting by designation.

[1]Pub. L. No. 104-88, 109 Stat. 803 (1995).

Federal Highway Administration (FHWA) administers and enforces regulations that impose restrictions on lease agreements between motor carriers and owner-operators of truck tractors, commonly known as the "Truth-in-Leasing" regulations. See 49 C.F.R. Part 376. A class of owner-operators has sued two motor carriers alleging that certain of their lease provisions violate the regulations. The Western District of Missouri dismissed one suit, deferring to the primary jurisdiction of FHWA. The agency then declined to exercise that jurisdiction. The result is four consolidated appeals in this court raising complex issues of statutory construction. The motor carriers and the American Trucking Association argue that the agency's statutory remedy is exclusive, while the owner-operators and FHWA argue that these private disputes should be resolved in federal court. Rejecting the motor carriers' contention, we reverse the district court's dismissal of the owner-operator claims.

## I. Background and Procedural History

Independent owner-operators lease truck equipment and provide driving services to federally registered motor carriers. In Case No. 98-1420, the Owner-Operator Independent Drivers Association and individual owner-operators (the "Owner-Operators") filed a class action complaint against New Prime, Inc., a registered motor carrier, and its affiliate, Success Leasing, Inc. (collectively, "Prime"), alleging that provisions in Prime's standard lease agreements and equipment rental-purchase contracts violate FWHA leasing regulations and are unconscionable under Missouri law. Briefly stated, the Owner-Operators challenge contract terms governing reserve funds and security deposits as violating 49 C.F.R. §§ 376.12(i) & (k).

The district court dismissed the complaint, concluding that FHWA has primary jurisdiction because the claims involve matters within the agency's expertise. The Owner-Operators then filed the first of our four consolidated appeals, arguing the district court improperly applied the primary jurisdiction doctrine. With that appeal pending, the Owner-Operators filed an *ex parte* Petition for Declaratory Order with

FHWA, asking the agency to issue a declaratory order either construing the relevant regulations in their favor, or declaring that the agency does not have primary jurisdiction over their dispute with Prime. FHWA responded with a Notice of Denial, declining to exercise primary jurisdiction because the Truth-in-Leasing regulations and the issues raised by the Owner-Operators "are fairly straightforward matters clearly within the competence of a court to resolve," and because the ICC had addressed similar issues in OPA Information Bulletin No. 93-103, No. MC-C-30192, Dart Transit Co.–Petition for Declaratory Order, 9 I.C.C.2d 701 (June 28, 1993). In Case No. 98-2942 and Case No. 98-3143, Prime appeals FHWA's refusal to exercise its administrative jurisdiction.

The Owner-Operators also commenced an action in the Southern District of Ohio, alleging that the lease agreements used by Arctic Express, Inc., and its affiliate, D & A Associates, Ltd. (collectively, "Arctic Express"), violate the same provisions of the Truth-in-Leasing regulations. Arctic Express appealed FHWA's Notice of Denial to the Sixth Circuit, which transferred the appeal to this court. That is Case No. 98-3478. The American Trucking Association has filed amicus briefs in support of the Prime and Arctic Express appeals, urging us to reverse the agency's refusal to exercise jurisdiction over the carriers' disputes with the Owner-Operators. The Ohio district court has stayed its proceedings pending our resolution of these appeals.

## II. The ICC Termination Act and Its Antecedents

Prior to the ICC Termination Act, the ICC comprehensively regulated licensed motor carriers. Congress intended that the Termination Act substantially deregulate rail and motor carrier transportation. One area of regulation expressly addressed in the Act was dispute resolution. The Report of the House Transportation and Infrastructure Committee explained:

In addition to overseeing the background commercial rules of the motor carrier industry, the ICC currently resolves disputes that arise in such areas. There is no explicit statutory requirement to do so. . . . The ICC dispute resolution programs include household goods and auto driveaway carriers, brokers, *owner-operator leasing*, loss and damage claims, duplicate payments and overcharges, and lumping.

The bill transfers responsibility for all the areas in which the ICC resolves disputes to the Secretary (except passenger intercarrier disputes). *The Committee does not believe that DOT should allocate scarce resources to resolving these essentially private disputes, and specifically directs that DOT should not continue the dispute resolution functions in these areas. The bill provides that private parties may bring actions in court to enforce the provisions of the Motor Carrier Act.* This change will permit these private, commercial disputes to be resolved the way that all other commercial disputes are resolved -- by the parties.

H.R. Rep. No. 104-311, at 87-88 (1995), reprinted in 1995-2 U.S.C.C.A.N. 793, 799-800 (emphasis added). Consistent with this explanation, the Committee described § 14704 of the House Bill as "provid[ing] for private enforcement of the provisions of the Motor Carrier Act in court. This expands the current law which only permits complaints brought under the Act to be brought before the ICC." Id. at 120-121, 1995-2 U.S.C.C.A.N. at 832-33. The Conference Committee ultimately adopted § 14704 of the House Bill. See H.R. Conf. Rep. No. 104-422, at 221-22 (1995), reprinted in 1995-2 U.S.C.C.A.N. 850, 906-07.

In these cases, the Owner-Operators seek to enforce the Truth-in-Leasing regulations in court, while the motor carriers seek to preserve the prior regime of exclusive administrative remedies. FWHA has declined to exercise jurisdiction over these private disputes, which is not surprising given the above-quoted congressional "directive." Before this court, the Owner-Operators and FHWA rely heavily on the Termination Act's legislative history. Prime, Arctic Express, and the American Trucking Association urge us to ignore this history because, "[w]hen the words of a

statute are unambiguous . . . judicial inquiry is complete." <u>Connecticut Nat'l Bank v. Germain</u>, 503 U.S. 249, 254 (1992) (internal quotation omitted). That is very true, and in all events our principal focus must be on the language of the relevant statutes. But we cannot ignore the broader perspective. The motor carriers argue that the dispute resolution provisions of the Termination Act unambiguously give FWHA not just primary but exclusive jurisdiction to resolve private disputes over the Truth-in-Leasing regulations. That interpretation is at odds with the overall congressional objective of partial deregulation *and* with the relevant committees' explanations of the specific provisions in question. To decide whether the motor carriers' plain language arguments surmount these obstacles, we begin by quoting the relevant Termination Act provisions:

### 49 U.S.C. § 14701.  General authority

(a) INVESTIGATIONS. . . .  If the Secretary or Board, as applicable, finds that a carrier . . . is violating this part, the Secretary or Board, as applicable, shall take appropriate action to compel compliance with this part. . . .

(b) COMPLAINTS.  A person, including a governmental authority, may file with the Secretary or Board, as applicable, a complaint about a violation of this part by a carrier . . . .

### § 14702.  Enforcement by the regulatory authority

(a) IN GENERAL.  The Secretary or the Board, as applicable, may bring a civil action --

(2) to enforce this part, or a regulation or order of the Secretary or Board, as applicable, when violated by a carrier . . . .

### § 14703.  Enforcement by the Attorney General

The Attorney General may, and on request of either the Secretary or the Board shall, bring court proceedings --

(1) to enforce this part or a regulation or order of the Secretary or Board or terms of registration under this part . . . .

## § 14704.  Rights and remedies of persons injured by carriers . . .

(a) IN GENERAL.  (1) ENFORCEMENT OF ORDER.  A person injured because a carrier . . . does not obey an order of the Secretary or the Board, as applicable, under this part, except an order for the payment of money, may bring a civil action to enforce that order under this subsection.  A person may bring a civil action for injunctive relief for violations of sections 14102 [the statute authorizing at least some of the motor carrier leasing regulations] and 14103.

(2) DAMAGES FOR VIOLATIONS.  A carrier . . . is liable for damages sustained by a person as a result of an act or omission of that carrier or broker in violation of this part.

(b) LIABILITY AND DAMAGES FOR EXCEEDING TARIFF RATE.  A carrier . . . is liable to a person for amounts charged that exceed the applicable rate for transportation or service contained in a tariff in effect under section 13702.

(c) ELECTION.  (1) COMPLAINT TO DOT OR BOARD; CIVIL ACTION.  A person may file a complaint with the Board or the Secretary, as applicable, under section 14701(b) or bring a civil action under subsection (b) to enforce liability against a carrier . . . .

(2) ORDER OF DOT OR BOARD. --

(B) ENFORCEMENT BY CIVIL ACTION.  The person for whose benefit an order of the Board or Secretary requiring the payment of money is made may bring a civil action to enforce that order under this paragraph if the carrier . . . does not pay the amount awarded by the date payment was ordered to be made.

These are obviously complex provisions, creating both administrative and judicial enforcement and remedies. The private judicial remedies are in § 14704. Much of that section deals with suits to recover rate overcharges, a subject not at issue in these appeals. More relevant for our purposes are the "general" remedies in §§ 14704(a)(1) and (2). Broadly speaking, the Owner-Operators argue these provisions authorize direct actions against carriers in federal court for violations of the Truth-in-Leasing regulations, while the carriers argue these remedies are secondary to FHWA's administrative remedies in § 14701.

### III. Specific Issues and Contentions

**A. Does FHWA Have Exclusive Jurisdiction To Enforce the Truth-in-Leasing Regulations?** A central issue is whether the Owner-Operators may bring a private right of action directly in the district court for violations of the regulations. If not, then their only remedy is to file administrative complaints under § 14701(b), and the district court was obviously correct in dismissing their action against Prime. The Owner-Operators and FHWA construe § 14704(a) as authorizing private rights of action for violations of the regulations. Prime and Arctic Express respond that § 14704(a) only authorizes private suits to enforce FHWA *orders*, not agency regulations. Given the structure of § 14704(a), this issue has multiple subparts.

1. The first sentence of § 14704(a)(1) authorizes civil actions to enforce FHWA orders. FHWA construes this language as including suits to enforce its Truth-in-Leasing regulations, relying on cases in which the word "order" in judicial review statutes has been construed to authorize review of agency rules or regulations. See, e.g., Northwest Airlines, Inc. v. Goldschmidt, 645 F.2d 1309 (8th Cir. 1981); Investment Co. Inst. v. Board of Governors of Fed. Reserve Sys., 551 F.2d. 1270 (D.C. Cir. 1977). But those cases turned on the presumption in favor of judicial review, which does not apply in this case. Here, the issue is whether Congress has authorized private persons to *enforce* a particular type of agency action.

Viewed in context, FHWA's argument is contrary to the plain language of the statute. In § 14702(a)(2) and § 14703(1), Congress explicitly authorized FHWA and the Attorney General to sue to enforce "this part *or regulation or order.*" The italicized words confirm that Congress in this statute distinguished between agency regulations and orders. Then, in § 14704(a)(1), the very next section, Congress granted private parties the right to sue to enforce an "order of the Secretary" that a carrier has not obeyed. Given the substantive and procedural differences between agency orders and regulations, and the policy differences inherent in government and private enforcement actions, we cannot ignore the plain language limiting the private right of action created by the first sentence of § 14704(a)(1) to suits to enforce agency orders. Thus, the first sentence of § 14704(a)(1) does not authorize the Owner-Operators to sue for violations of the Truth-in-Leasing regulations.[2]

2. The second sentence of § 14704(a)(1) provides that a private party such as the Owner-Operators "may bring a civil action for injunctive relief for violations of section[] 14102," the section of the Motor Carrier Act that deals specifically with motor carrier leasing. Though this sentence refers only to violations of the statute, it must also include violations of FHWA's implementing regulations. Because § 14102 contains no mandates or prohibitions but simply authorizes the Secretary to adopt leasing requirements, it would be impossible for a carrier to violate the statute other than by violating rules or regulations promulgated under the statute.

_____

[2]This question of statutory interpretation would be different if FHWA referred to its regulations as agency orders. See Hawaiian Tel. Co. v. Public Utils. Comm'n, 827 F.2d 1264, 1270-72 (9th Cir. 1987), cert. denied, 487 U.S. 1218 (1988), construing the Federal Communications Act, and Pacific Fruit Exp. Co. v. Akron, Canton & Youngstown R.R., 524 F.2d 1025 (9th Cir. 1975), cert. denied, 424 U.S. 911 (1976), construing rail carrier provisions of the Interstate Commerce Act. Unlike the statutes at issue in those cases, the dispute resolution provisions of the ICC Termination Act expressly distinguish between orders and regulations, and the agency concedes we are dealing with regulations.

Prime argues that this provision must be limited to actions brought to enforce FHWA orders because it is part of § 14704(a)(1), which is titled "Enforcement of Order." We disagree. "Section and subchapter titles cannot alter the plain meaning of a statute; they can only assist in clarifying ambiguity." Minnesota Transp. Regulation Bd. v. United States, 966 F.2d 335, 339 (8th Cir. 1992). This sentence was added to § 14704(a)(1) in conference, and its plain language is not limited to violations of agency orders. Moreover, the sentence as construed by Prime would make little practical sense -- a party suing to enforce an agency order is unlikely to need relief beyond enforcement of the order.[3]

The carriers further argue that, even if § 14704(a)(1) authorizes private actions for injunctive relief for violations of regulations promulgated under § 14102, the Owner-Operators' claims arise under regulations that were not promulgated under FWHA's § 14102 authority. In initially promulgating Truth-in-Leasing regulations, the ICC cited as authority both the predecessor of § 14102 and the statute giving the agency general power to issue regulations, now found in 49 U.S.C. § 13301(a). See generally Global Van Lines, Inc. v. ICC, 627 F.2d 546 (D.C. Cir. 1980), cert. denied, 449 U.S. 1079 (1981). Section 14102(a) authorizes the Secretary to prescribe specific types of leasing requirements. The carriers argue that the leasing regulations on which the Owner-Operators rely, 49 C.F.R. §§ 376.12(i) & (k), go beyond the scope of § 14102(a) and therefore may not be enforced by a private action for injunctive relief under § 14704(a)(1). There is a simple answer to this contention -- it is not part of the jurisdictional issues before us. Section 14704(a)(1) creates a private right of action for injunctive relief for violations of regulations promulgated under § 14102(a). The Owner-Operators invoked that portion of § 14704(a)(1) in commencing this action.

---

[3]Consistent with this interpretation, the Conference Report stated that private actions brought to enforce the "leasing . . . rules may also seek injunctive relief." H.R. Conf. Rep. No. 104-422 at 221, reprinted in 1995-2 USCCAN at 906.

Whether their claim for injunctive relief is valid must be addressed in the first instance by the district court.

3. Section 14704(a)(2) provides that "[a] carrier . . . is liable for damages sustained by a person as a result of an act or omission of that carrier . . . in violation of this part." The Owner-Operators argue this statute creates an express private right of action to remedy violations of the Truth-in-Leasing regulations. Prime argues § 14704(a)(2) must be read with § 14704(a)(1) as limited to actions to enforce agency orders. We decline to read these two subsections as interrelated. They are separate parts of § 14704(a), which is entitled, "In General." Moreover, a review of § 14704 in the two bills that were sent to conference, H.R. 2539 and S. 1396, reveals that the Conference Committee drafters reorganized this section in the final bill -- the enforcement of agency orders section that is now § 14704(a)(1) and the damage remedy that is now § 14704(a)(2) were not previously linked.

The carriers further argue that the language of § 14704(a)(2) -- a carrier "is liable for damages sustained" on account of a "violation of this part" -- is not sufficient to authorize a private right of action for damages for violations of FHWA regulations. In this regard, we confess to being rather mystified by the inconsistent language used in the Termination Act's various enforcement provisions. In § 14702(a)(2) and § 14703(1), Congress authorized FHWA and the Attorney General to sue "to enforce this part *or a regulation or order*," whereas § 14704(a)(2) makes carriers liable in damages for conduct "in violation of this part." Moreover, the language of § 14704(a)(1) explicitly gives private parties the right to sue, whereas § 14704(a)(2) passively says that a carrier "is liable for damages sustained by a person." Despite these linguistic imperfections and inconsistencies, the most logical reading of the language of § 14704(a)(2) is that it authorizes private parties to sue for damages for carrier conduct "in violation of [regulations promulgated under] this part." And that interpretation is certainly reinforced by the legislative history of § 14704(a)(2). The Conference Report stated that§ 14704(a)(2) "provides for private enforcement of the

provisions of the Motor Carrier Act in court. . . . The ability to seek injunctive relief for motor carrier leasing . . . violations is in addition to and does not in any way preclude the right to bring civil actions for damages for such violations." H.R. Conf. Rep. No. 104-422 at 221-22, reprinted in 1995-2 U.S.C.C.A.N. at 906-07. In construing this inconsistently drafted statute, it is appropriate to use its legislative history to confirm the most plausible construction of a subsection's plain language. See Wisconsin Public Intervenor v. Mortier, 501 U.S. 597, 610 n.4 (1991).

For the foregoing reasons, we conclude that 49 U.S.C. § 14704(a) authorizes private actions for damages and injunctive relief to remedy at least some violations of the Motor Carrier Act and its implementing regulations. Thus, we reject the motor carriers' contention that FHWA's remedial jurisdiction is exclusive.

**B. The Issue of FHWA Primary Jurisdiction.** The district court properly concluded it has jurisdiction over the Owner-Operators' claims against Prime, jurisdiction that is concurrent with FHWA's administrative enforcement and remedial powers. However, as the court recognized, this does not resolve the issue of primary jurisdiction, a common law doctrine that allows a court to refer matters to an administrative agency to give the agency an opportunity to address issues within its expertise. See Access Telecomms. v. Southwestern Bell Tel. Co., 137 F.3d 605, 608 (8th Cir.), cert. denied, 119 S. Ct. 404 (1998).

The district court invoked the doctrine of primary jurisdiction and dismissed the Owner-Operators' complaint. After the dismissal, the Owner-Operators petitioned FHWA for a declaratory order. The agency responded, refusing to exercise its discretionary jurisdiction under § 14701(a), or its discretion to commence an enforcement action under § 14702(a)(2), because Congress in the ICC Termination Act's legislative history told the agency not to allocate scarce resources to resolving private disputes. The agency further expressed its view that resolution of the Owner-

Operators' claims "are fairly straightforward matters clearly within the competence of a court to resolve."

On appeal, the motor carriers argue we should compel FHWA to exercise its jurisdiction. However, they cannot point to a provision in the ICC Termination Act that overcomes "the presumption that agency decisions not to institute proceedings are unreviewable under" the Administrative Procedure Act. Heckler v. Chaney, 470 U.S. 821, 837 (1985); see United States v. Gary, 963 F.2d 180, 185 (8th Cir. 1992). The doctrine of primary jurisdiction enables a court to stay its hand while seeking the guidance of an administrative agency's perceived expertise. When the agency declines to provide guidance or to commence a proceeding that might obviate the need for judicial action, "[t]he court [can] then proceed according to its own light." Atchison, Topeka & Santa Fe Ry. v. Aircoach Transp. Ass'n, 253 F.2d 877, 886 (D.C. Cir. 1958), cert. denied, 361 U.S. 930 (1960); see Local Union No. 189, Amalgamated Meat Cutters v. Jewel Tea Co., 381 U.S. 676, 686 (1965) ("the doctrine of primary jurisdiction is not a doctrine of futility"); Skaw v. United States, 740 F.2d 932, 938 (Fed. Cir. 1984). Accordingly, the district court should now proceed to exercise its jurisdiction over the Owner-Operators' claims against Prime.

**C. FHWA's Notice Ruling.** Prime argues that the Owner-Operators' *ex parte* application to FHWA for a declaratory order, and the agency's Notice denying that application, constitute an adjudication that violated the Administrative Procedure Act and Prime's right to due process. We strongly disapprove of the Owner-Operators' *ex parte* approach to the agency, and if the result had been an "adjudication" adverse to Prime's interests, we would reverse FHWA's ruling as procedurally improper. But there has been no such adjudication. FHWA's denial Notice had no more effect than if the agency had filed an amicus brief or memorandum with the district court declining the court's request for administrative guidance and expertise. To the extent FHWA expressed views that are relevant to the merits of Prime's dispute with the Owner-Operators, Prime will have ample opportunity to respond in the district court.

**D. The Merits of the Underlying Dispute.** Prime argues we should affirm the district court's dismissal of Count II of the Owner-Operators' complaint because the agreement containing the challenged terms was not a "lease" as defined by the Truth-in-Leasing regulations. Prime further argues we should affirm the dismissal of Count III because this Missouri law claim is preempted by federal law. These contentions go to the merits of the underlying dispute. They should be addressed in the first instance by the district court. We therefore decline to consider them at this time.

In Case No. 98-1420, we reverse the judgment of the district court and remand for further proceedings not inconsistent with this opinion. In Case No. 98-2942, Case No. 98-3143, and Case No. 98-3478, we deny the petitions for review.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.