Michael MARRIER and Mary
Marrier, Plaintiffs,

v.

NEW PENN MOTOR EXPRESS,
INC., Defendant.

No. 2:99–CV–79.

United States District Court,
D. Vermont.

March 27, 2001.

_____

Mary P. Kehoe, Lisman, Webster, Kirkpatrick & Leckerling, P.C., Burlington, VT, for Michael Marrier, Husband, plaintiff.

Steven Alfred Bredice, Powell, Orr & Bredice, Burlington, VT, for New Penn Motor Express, Inc., defendant.

## OPINION AND ORDER

SESSIONS, District Judge.

Michael and Mary Marrier ("the Marriers" or "Plaintiffs") brought this personal injury action against New Penn Motor Express, Inc. ("New Penn"), asserting a claim under the Interstate Transportation Act (the "ITA" or the "Act") and a common law negligence claim. New Penn has filed two motions for summary judgment under Federal Rule of Civil Procedure 56(b). For the reasons that follow, those motions are **DENIED**.

### I. Background

The following facts are construed in the light most favorable to the Marriers, the nonmoving parties. Michael Marrier was employed as a dock worker by Carpenter's Motor Transport, Inc. ("Carpenter's"), a carrier that receives goods and materials from other motor carriers, such as New Penn, for distribution within Vermont. On March 20, 1996, Mr. Marrier unloaded a New Penn truck in which there had been a spill of sodium hydroxide, a highly toxic

chemical.[1] After several hours of unloading the truck, he developed a "debilitating headache" and, later in the day, severe joint pain. *See* Compl. ¶¶ 11–12 (Paper 1).

During the following several days, Mr. Marrier's symptoms worsened and he missed several days of work. He was diagnosed with "severe bronchitis with signs of chemically induced pneumonia," *id.* ¶ 15, and later with "chemical pneumonitis," *id.* ¶ 16. Finally, on July 23, 1996, Mr. Marrier was diagnosed with "Reactive Airways Dysfunction Syndrome (RADS)," a form of asthma. *Id.* ¶ 17; Verified Mot. to Allow Service Outside Time Limits at 2 (Paper 7) [hereafter, "Mot. to Allow Service"].[2] Because of his symptoms, Mr. Marrier claims that he is "unable to carry out ordinary and useful tasks of daily living ... and work" and is sometimes "almost completely physically incapacitated." Compl. ¶ 20. Further, Mr. Marrier believes that he will require ongoing medical care and daily medication for his symptoms for the rest of his life.

The Marriers filed the instant action on March 16, 1999, asserting a claim under the ITA as well as a common law negligence claim. Simultaneous with the filing, counsel for the Marriers express-mailed New Penn a copy of the summons, complaint, and demand for jury trial, together with an Acknowledgment of Receipt of Summons and Complaint form, all of which New Penn received on March 17, 1999.

In April, 1999, an insurance adjuster representing New Penn contacted counsel for the Marriers and told her that the law firm of Wilson, Powell & Lang would be defending New Penn in this matter. Counsel informed the adjuster of a possible conflict of interest counsel might have with that firm. The adjuster stated that he did not believe there was a conflict. Shortly thereafter, counsel for the Marriers met with Attorney Bret Powell, who indicated that he would be representing New Penn and that he also did not believe there was a conflict. The Marriers assert that "[a]t that point, based on the adjuster's unsolicited call and Attorney Powell's affirmative statements of representation, [counsel for the Marriers] assumed that Attorney Powell would execute the Acknowledgment of Receipt of Summons and Complaint and would answer the Complaint in due course." Mot. to Allow Service at 3.

However, on July 27, 1999, counsel for the Marriers received an order from the Court that proof of service had to be filed within twenty days, at which point she realized that Attorney Powell never returned the Acknowledgment or filed an answer. She immediately contacted New Penn's counsel, who informed her for the first time that New Penn would not waive formal service. Upon learning this, coun-

---

1. The Marriers allege that "Sodium Hydroxide is classified by the federal government as a Class 8 hazardous material, and is commonly known to be a dangerous chemical. It is a corrosive that causes visible destruction and/or irreversible alteration to human tissue." Compl. ¶ 23 (Paper 1).

The Marriers also allege that the spill came from a 15–gallon barrel of liquid sodium hydroxide that had broken on the New Penn truck during transit. When Mr. Marrier arrived to unload the truck, the rear end of the wooden truck bed had been soaked with the chemical, although another Carpenter's employee had already removed the broken barrel from the truck. *See id.* ¶¶ 9–10.

2. The Marriers allege that, until this diagnosis, Mr. Marrier was not aware that "he was suffering from a permanent injury brought on by his exposure to hazardous materials. Indeed, Mr. Marrier's physician initially determined he suffered only from a temporary pulmonary illness due to exposure to Defendant's chemical spill." Mot. to Allow Service at 2 (citation omitted).

sel for the Marriers "immediately undertook to serve New Penn by sheriff," and service was accomplished on August 4, 1999. *Id.*

New Penn filed a motion to dismiss on August 13, 1999, arguing that, in Vermont, in order for the filing of a complaint to toll the statute of limitations, the complaint must be filed within the statute of limitations period and the defendant must be served with process within sixty days of filing. Because the Marriers failed to effect timely service within sixty days, New Penn argued, the fact that they filed their complaint within the statute of limitations period (here, three years) was of no avail.[3]

The Marriers opposed this motion and filed their own motion to allow service outside the time limits due to excusable neglect. The Court, finding that there had been excusable neglect, granted the Marriers' motion and denied New Penn's motion to dismiss. *See* Memorandum and Order (Paper 11). The Court also denied New Penn's motion to reconsider this decision. *See* Order (Paper 17).

New Penn has now filed two motions for summary judgment. In the first one, New Penn argues that the ITA does not create a private right of action for personal injury, and that even if it did, the Marriers' claims would be time-barred under the terms of that Act. In the second, New Penn reasserts its statute of limitations defense which this Court has already addressed—and rejected—twice.

**II. Legal Standard**

Summary judgment should be granted when there is no dispute as to material facts and the moving party is entitled to judgment as a matter of law. *See* Fed. R.Civ.P. 56(c); *Celotex Corp. v. Catrett,*

477 U.S. 317, 322–25, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A party seeking summary judgment bears the burden of establishing that no genuine issue of material fact remains for trial. *See Consarc Corp. v. Marine Midland Bank, N.A.,* 996 F.2d 568, 572 (2d Cir.1993). The evidence of the nonmoving party should be taken as true, and all justifiable inferences should be drawn in its favor. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). If, upon examination of the record, the Court finds that any material issue remains in dispute, the motion for summary judgment must be denied. *See Gibson v. Am. Broad. Cos.,* 892 F.2d 1128, 1132 (2d Cir. 1989).

**III. Discussion**

**A. Interstate Transportation Act claim**

**1. Private right of action for personal injury**

■ The Marriers bring their first claim under the Interstate Transportation Act, 49 U.S.C. § 13101 *et seq.* Specifically, they rely on 49 U.S.C. § 14101(a), which mandates that "a motor carrier shall provide safe and adequate service, equipment, and facilities," and 49 U.S.C. § 14704(a)(2), which provides, in relevant part, that "[a] carrier . . . is liable for damages sustained by a person as a result of an act or omission of that carrier . . . in violation of this part." The Marriers assert that these two provisions, read together, create a private right of action for personal injury in the circumstances present here.

In its first motion for summary judgment, New Penn asserts that "in order to bring a claim under the Interstate Transportation Act, a plaintiff must demonstrate

---

**3.** There is no dispute that by the time the Marriers effected service on New Penn, the statute of limitations period had expired.

that they have sustained economic damages as a result of a violation by the carrier of a tariff regulation." Def.'s Mot. for Summ.J. on Pl.'s [sic] Claim Under the ITA at 2 (Paper 35) [hereafter, "Mot. for Summ.J. on ITA Claim"]. In making this assertion, however, New Penn relies on the wrong subsection of the Act. It cites "49 USCS [sic] § 14704(b)," *see id.*, which does in fact address liability for charges in excess of the tariff rate, but unfortunately for New Penn, is not the subsection under which the Marriers bring their claims. Rather, they bring their claims under 49 U.S.C. § 14704(a)(2), which by its express terms, has nothing to do with tariffs.

In its reply memorandum, New Penn asserts that

[a] fair reading of Plaintiffs' Opposition To Defendant's Motion For Summary Judgment Under The Interstate Transportation Act indicates that Plaintiffs' argument rests upon a negative inference: The Act apparently does not expressly prohibit a private citizen from bringing an action against a carrier for personal injuries, and such an action is therefore permitted within the scope of the Act.... However, ... [the Act's] purposes are not safety-related but rather economic.

Def.'s Reply to Pls.' Opp. to Def.'s Mot. for Summ.J. Under the ITA at 1 (Paper 40) [hereafter, "ITA Reply"]. Both of these assertions are unfounded. First, the Mar-

riers do not rely upon a "negative inference" but rather the plain meaning of the statute, which by its terms, creates a private right of action for personal injury. Second, the purposes of the ITA are not solely "economic" as New Penn asserts, but are, rather, manifold. In the "General Provisions" of Part B of the Act (the part under which the Marriers bring their claims), Congress provided that "it is the policy of the United States Government to oversee the modes of transportation and, in overseeing those modes, to promote *safe*, adequate, economical, and efficient transportation." 49 U.S.C. § 13101(a)(1)(B) (emphasis added). Thus, the Court concludes that, contrary to New Penn's assertions, at least one of the purposes of the ITA was to try to ensure safety in the operation of motor carriers. Therefore, New Penn's argument that the ITA does not create a private right of action for personal injury is without merit, and its motion for summary judgment on that basis must be denied.[4]

## 2. Statute of limitations under the ITA

New Penn further argues that, assuming the ITA does create a private right of action for personal injury, such action would be barred by the ITA's express statute of limitations. However, in support of this contention, New Penn points only to provisions of the ITA governing

---

4. New Penn also asserts in its reply memorandum that

even assuming for purposes of argument that it is possible for someone to sue a carrier under the Act for some sort of safety-related violation, Plaintiffs still have not been able to point to any "act or omission" by the Defendant in this case "in violation of this part", i.e. 49 U.S.C.S. [sic] §§ 13101 et seq. If there is such a provision, Plaintiffs bear the burden of citing it.

ITA Reply at 2. But the Marriers do cite a provision in the relevant part of the statute which they allege New Penn violated by fail-

ing to safely transport the barrel of sodium hydroxide: 49 U.S.C. § 14101(a) ("a motor carrier shall provide safe and adequate service, equipment, and facilities"). Thus, New Penn's argument on this point is meritless. Moreover, its assertion that "despite repeated and exhaustive searching," New Penn has been unable to find "a single case that stands for the proposition that a Plaintiff in a tort case alleging personal injury against a carrier has a claim under the Act," ITA Reply at 2, does not prove that there is no private right of action under the ITA for personal injury.

actions to "recover charges for transportation or service" (which it asserts have an eighteen-month statute of limitations) and "[c]omplaints with the transportation secretary or transportation board," which it asserts must be filed within two years after the claim accrues. Mot. for Summ.J. on ITA Claim at 2. Clearly, this is not an action "to recover charges for transportation or service," nor is it a complaint with the secretary or transportation board. Moreover, as the plaintiffs point out, none of the statutes of limitations set forth in the ITA apply to a personal injury action such as this. *See* 49 U.S.C. § 14705. Thus, the applicable statute of limitations period would be the one for personal injury actions in Vermont,[5] which is three years. *See* Vt.Stat.Ann. tit. 12, § 512 (2000). This, as the Court has already held and holds again below, the Marriers have successfully tolled. Therefore, New Penn's motion for summary judgment on the Marriers' ITA claim must be denied.

### B. Statute of limitations for negligence claim

In New Penn's second motion for summary judgment, it resurrects its argument that the Marriers' claims must be dismissed for failure to comply with the usual three-year statute of limitations for personal injury claims in Vermont. New Penn suggests that, through discovery, it has gathered facts that may persuade the Court to overrule its previous decisions on this matter. Namely, it asserts that Plaintiffs' admissions establish "that at no time during any conversation between Plaintiffs' counsel and any [representative] of the defendant was any mention made of the statute of limitations applicable to this lawsuit nor was any mention made of waiv-

er of service." Def.'s Mot. for Summ.J. Based on the Expiration of the Statute of Limitations at 1–2 (Paper 36). This fact, however, does nothing to change the Court's previous analysis. Counsel for the Marriers never asserted that any mention was made of the statute of limitations or waiver of service in any of her conversations with New Penn's representatives, nor did the Court rely on such an assumption in denying New Penn's motion to dismiss. Rather, the Court held that Plaintiffs' counsel's mistake in failing to serve New Penn by Sheriff within sixty days was understandable given the fact that she spoke with New Penn representatives repeatedly and the long history among Vermont lawyers of voluntary waivers, both of which justified a finding of excusable neglect and the allowance of service outside of the normal time limits. Therefore, New Penn has offered no reason for the Court to disturb its previous ruling, and its motion for summary judgment based on the expiration of the statute of limitations for negligence claims must also be denied.

### IV. Conclusion

Wherefore, the Court **DENIES** both of New Penn's motions for summary judgment (Papers 35 and 36).

---

**5.** "When Congress has not established a time limitation for a federal cause of action, the settled practice has been to adopt a local time limitation as federal law if it is not inconsistent with federal law or policy to do so."

*Wilson v. Garcia*, 471 U.S. 261, 266–67, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985). Adopting Vermont's statute of limitations for personal injury actions in this case is in no way inconsistent with federal law or policy.