James STEWART and Gloria Stewart, Plaintiffs,

v.

MITCHELL TRANSPORT, Larry G. Ramsey, Insurance Corporation of Hannover, Defendants.

Civil Action No. 01–2546–GTV.

United States District Court, D. Kansas.

Dec. 23, 2002.

---

**30.** 20 C.F.R. § 404.1545–46 and § 416.945–56 (2001).

**31.** *See Hargis v. Sullivan,* 945 F.2d 1482, 1491 (10th Cir.1991); 42 U.S.C. § 423(d)(2)(C).

Lawrence D. Flick, Prairie Village, KS, for James Stewart, Gloria Stewart, Plaintiffs.

Roger W. Warren, Jeffrey C. Baker, Sanders Conkright & Warren LLP, Kan-

sas City, MO, for Mitchell Transport, Inc., Larry G. Ramsey, Insurance Corporation of Hannover, Insurance Corporation of Hanover, defendants.

Michael D. Matteuzzi, Michael L. Belancio, Niewald & Brown, P.C., Kansas City, MO, for Associates Insurance Company, movant.

## MEMORANDUM AND ORDER

VanBEBBER, Senior District Judge.

Plaintiffs James and Gloria Stewart bring this action to recover for injuries and losses they sustained when Defendant Larry G. Ramsey, an employee of Defendant Mitchell Transport, was driving a tractor-trailer and rear-ended Plaintiff James Stewart's automobile. Plaintiffs submit that they are entitled to recovery pursuant to a private right of action created by 49 U.S.C. § 14704(a)(2), and under a state law negligence theory. Defendants have moved for partial summary judgment (Doc. 108), arguing that § 14704(a)(2) does not create a private right of action, that Plaintiffs are not entitled to statutory attorney fees, and that Plaintiffs are not entitled to punitive damages. For the following reasons, the court grants the motion in part and denies it in part. Specifically, the court grants Defendants' motion with respect to Plaintiffs' § 14704(a)(2) claim and claims for attorney fees, and denies the motion with respect to Plaintiffs' claim for punitive damages.

## I. FACTUAL BACKGROUND

The following facts are taken from the summary judgment record and are either uncontroverted or viewed in the light most favorable to Plaintiffs' case. Immaterial facts and facts not properly supported by the record are omitted. Additional material facts are included throughout the opinion as necessary.

On November 19, 1999, Plaintiff James Stewart was driving a pick-up truck eastbound on I-435 in Overland Park, Kansas. Defendant Larry G. Ramsey, who was also eastbound driving a tractor-trailer for Defendant Mitchell Transport, rear-ended Plaintiff. Ramsey was given a ticket for following too closely and pleaded guilty to the charge. According to Plaintiffs' expert witness, Stewart sustained soft tissue injuries as a result of the accident. Plaintiff Gloria Stewart claims that she has suffered loss of services and consortium. Plaintiffs brought suit against Defendants Ramsey, Mitchell Transport, and Insurance Corporation of Hannover ("Defendant Hannover"), the liability insurance carrier of Defendants Mitchell Transport/Ramsey.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c). Lack of a genuine issue of material fact means that the evidence is such that no reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Essentially, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52, 106 S.Ct. 2505.

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. This burden may be met by showing that there is a lack of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477

U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once the moving party has properly supported its motion for summary judgment, the burden shifts to the nonmoving party to show that there is a genuine issue of material fact left for trial. *Anderson*, 477 U.S. at 256, 106 S.Ct. 2505. "[A] party opposing a properly supported motion for summary judgment may not rest on mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Id.* Therefore, the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. *Id.* The court must consider the record in the light most favorable to the nonmoving party. *Bee v. Greaves*, 744 F.2d 1387, 1396 (10th Cir.1984).

## III. DISCUSSION

### A. Private Right of Action under 49 U.S.C. § 14704(a)(2)

Plaintiffs claim that they have a private right of action under 49 U.S.C. § 14704(a)(2), which is part of the Motor Carrier Act, 49 U.S.C. §§ 10101 *et seq.*[1] Defendants argue that § 14704(a)(2) does not create a private right of action for what is actually a state law negligence claim. The court agrees that the Motor Carrier Act does not create a private cause of action in this case, and grants summary judgment on Plaintiffs' § 14704 claim.

49 U.S.C. § 14704(a)(2) provides:

**Damages for violations**—A carrier or broker providing transportation or service subject to jurisdiction under Chapter 135 is liable for damages sustained by a person as a result of an act or omission of that carrier or broker in violation of this part.

Plaintiffs argue that, on its face, § 14704(a)(2) creates a private right of action for personal injury. They cite a case from the District of Vermont, *Marrier v. New Penn Motor Express, Inc.*, 140 F.Supp.2d 326 (D.Vt.2001), in support of this proposition. In Marrier, the plaintiff, a dock worker, was loading a tractor-trailer that was contaminated with sodium hydroxide, a highly toxic chemical. 140 F.Supp.2d at 326–27. As a result, the plaintiff developed severe illness, and filed a claim under the Interstate Transportation Act (or the Motor Carrier Act) and for common law negligence. *Id.* at 327. The court noted that Congress provided that " 'it is the policy of the United States Government to oversee the modes of transportation and, in overseeing those modes, to promote safe, adequate, economical, and efficient transportation.' " *Id.* at 329 (quoting 49 U.S.C. § 13101(a)(1)(B)). Applying this language, the court reasoned that "at least one of the purposes of the ITA was to ensure safety in the operation of motor carriers." *Id.* The court held that the plain language of § 14704(a)(2) creates a private right of action for personal injury. *Id.*

█ With all due respect, the court disagrees with the reasoning in Marrier. The court finds the language in § 14704(a)(2) ambiguous and inconsistent with other language in the statute, and looks to the legislative history for guidance in interpreting the statute.

As noted above, § 14704(a)(2) states that a carrier "is liable for damages sustained by a person . . . ." The language does not specifically indicate that a private right of

---

**1.** Plaintiffs term their claim as one for violation of the Interstate Transportation Act. The court believes the more widely-used name for the group of statutes at issue is the Motor Carrier Act of 1980 (as amended by the ICC Termination Act of 1995), and will refer to it as such.

action is created. In contrast, the drafters were much more specific in § 14704(a)(1), the provision directly preceding § 14704(a)(2). Section 14704(a)(1) explicitly authorizes individuals to bring suit for violations of orders of the Secretary of Transportation or the Surface Transportation Board:

> **Enforcement of Order.** A person injured because a carrier ... does not obey an order of the Secretary or the Board, as applicable, under this part ... may bring a civil action to enforce that order under this subsection.

> A person may bring a civil action for injunctive relief for violations of sections 14102 and 14103.

The Eighth Circuit, the only Circuit that has extensively examined § 14704, avoided labeling the statute "ambiguous," but noted that the terms of the statute are inconsistent, justifying reference to its legislative history. *Owner–Operator Indep. Drivers Ass'n, Inc. v. New Prime, Inc.*, 192 F.3d 778, 785 (8th Cir.1999). In *Owner–Operator*, the Eighth Circuit stated, "In construing this inconsistently drafted statute, it is appropriate to use its legislative history to confirm the most plausible construction of a subsection's plain language." *Id.* (citing *Wis. Pub. Intervenor v. Mortier*, 501 U.S. 597, 610 n. 4, 111 S.Ct. 2476, 115 L.Ed.2d 532 (1991)).

The legislative history of the statute indicates that Congress did intend to create certain private rights of action in § 14704(a)(2), but not a right of action for personal injury. The statute was enacted in 1995 as part of the ICC Termination Act. The ICC Termination Act was intended to "substantially deregulate[ ] the rail and motor carrier industries and abolish[ ] the 108–year–old Interstate Commerce Commission [ ('ICC') ]." H.R.Rep. No. 104–311, at 81 (1995), reprinted in 1995–2 U.S.C.C.A.N. 793, 794.

The Conference Report regarding the Act states that § 14704(a)(2) "provides for private enforcement of the provisions of the Motor Carrier Act in court.... The ability to seek injunctive relief for **motor carrier leasing or lumping violations** is in addition to and does not in any way preclude the right to bring civil actions for damages for such violations." *Owner–Operator*, 192 F.3d at 785 (quoting H.R. Conf. Rep. No. 104–422, at 221–22 (1995), reprinted in 1995–2 U.S.C.C.A.N. at 906–07) (emphasis added). Other comments indicate that the statute was enacted to address commercial disputes, not personal injury claims:

> In addition to overseeing the background **commercial rules** of the motor carrier industry, the ICC currently resolves disputes that arise in such areas. There is no explicit statutory requirement to do so.... The ICC dispute resolution programs include household goods and auto driveway carriers, brokers, owner-operator leasing, loss and damage claims, duplicate payments and overcharges, and lumping. The bill transfers responsibility for all the areas in which the ICC resolves disputes to the Secretary (except passenger intercarrier disputes). The Committee does not believe that DOT should allocate scarce resources to resolving these essentially private disputes, and specifically directs that DOT should not continue the dispute resolution functions in these areas. The bill provides that private parties may bring actions in court to enforce the provisions of the Motor Carrier Act. This change will permit these private, **commercial disputes** to be resolved the way that all other **commercial disputes** are resolved—by the parties.

H.R.Rep. No. 104–311, at 87–88, reprinted in 1995–2 U.S.C.C.A.N. at 799–800 (em-

phasis added). Based on this language, the court concludes that Congress was primarily concerned with transferring the resolution of commercial disputes from the ICC to the courts. It does not appear from the court's research that the ICC had jurisdiction over personal injury suits before its termination.[2] The legislative history gives no indication that Congress intended to expand the scope of the Motor Carrier Act to cover personal injury claims where there was no such coverage before.

In Owner–Operator, the Eighth Circuit held that § 14704(a) authorized a private right of action for the leasing dispute at issue in the case. However, the court also indicated that it could fathom a situation where § 14704(a) would not authorize a private cause of action: "[W]e conclude that ... § 14704(a) authorizes private actions for damages and injunctive relief to remedy **at least some** violations of the Motor Carrier Act and its implementing regulations." *Id.* (emphasis added). The court agrees with this statement, but takes it a step further. Section 14704(a)(2) creates a private right of action for damages in commercial disputes involving violations of the Motor Carrier Act and its regulations, but not for personal injury actions such as the one in the instant case. The court grants summary judgment as to this claim.[3]

## B. Attorney Fees

▪ Plaintiffs assert that they are entitled to attorney fees pursuant to two stat-

utes. Plaintiffs first assert that 49 U.S.C. § 14704(e) affords them a right to attorney fees. Because the court has determined that Plaintiffs do not have a cause of action under § 14704, no attorney fees are appropriate under the statute.

Plaintiffs next argue that they are entitled to attorney fees from Defendant Hannover under K.S.A. § 40–256, which provides:

> **Attorney fees in actions on insurance policies; exception.** That in all actions hereafter commenced, in which judgment is rendered against any insurance company as defined in K.S.A. 40–201, and including in addition thereto any fraternal benefit society and any reciprocal or interinsurance exchange on any policy or certificate of any type or kind of insurance, if it appears from the evidence that such company, society or exchange has refused without just cause or excuse to pay the full amount of such loss, the court in rendering such judgment shall allow the plaintiff a reasonable sum as an attorney's fee for services in such action, including proceeding upon appeal, to be recovered and collected as a part of the costs....

Defendants respond that the plain language of the statute precludes recovery of attorney fees by Plaintiffs—the statute states that judgment must be rendered "on any policy or certificate." Plaintiffs are not parties to the insurance policy issued by Defendant Hannover and covering the

---

**2.** The court does note that the Report of the House of Representatives states that the ICC was responsible for resolving "loss and damage claims." Other language in the Report indicates that the term "loss and damage claims" refers to the loss and damage of goods as addressed by 49 U.S.C. § 14706. H.R.Rep. No. 104–311, at 86, 87, reprinted in 1995–2 U.S.C.C.A.N. at 798, 799. There is no indication that such claims refer to personal injury claims.

**3.** The court has considered the parties' arguments regarding any claims that Defendants were negligent *per se,* and concludes that no claim may be proved by using a negligence *per se* theory. Plaintiffs cited no state statute in the pretrial order to indicate that they intended to proceed on a negligence *per se* theory. The pretrial order controls the course of litigation. *Franklin v. United States,* 992 F.2d 1492, 1497 (10th Cir.1993).

acts of Defendants Ramsey and Mitchell Transport. Furthermore, Plaintiffs have not brought an action on the policy. Rather, they have brought a suit for direct liability against Defendant Hannover. Defendants argue that, for these reasons, Plaintiffs do not have a viable claim for attorney fees under K.S.A. § 40–256 at this time. The court agrees.

■ Plaintiffs argue that K.S.A. § 40–256 permits an award of attorney fees for a third-party plaintiff against an insurer of a defendant, citing *Hawkins v. Dennis*, 258 Kan. 329, 905 P.2d 678 (1995). In Hawkins, the plaintiff, the victim of a car accident, obtained a jury verdict against the defendant in an amount well above the defendant's insurance policy limit. 905 P.2d at 680–81. Thereafter, the plaintiff brought a garnishment action against the defendant's insurer to collect the judgment in excess of the policy limit. *Id.* The plaintiff based his garnishment claim on the theory that the insurer was indebted to the defendant because it failed to act in good faith in representing him, thereby resulting in a verdict exceeding the policy limit. *Id.* at 681. After the court entered default judgment for the plaintiff, it awarded the plaintiff attorney fees pursuant to K.S.A. § 40–256. *Id.* Plaintiffs argue that Hawkins demonstrates that he may be entitled to attorney fees from Defendant Hannover.

The court agrees that, at some point, Plaintiffs may be able to seek attorney fees from Defendant Hannover pursuant to K.S.A. § 40–256. As Judge Lungstrum stated in an earlier opinion in this case, "if plaintiffs obtain a judgment against the insured party, defendant Mitchell Transport, and become judgment creditors, then they may attempt to collect in a garnishment proceeding against the insurer ...." It is within such a garnishment proceeding that the Kansas Supreme Court has al-

lowed a third-party plaintiff's claim for attorney fees. E.g., *id.* Similarly, if Defendants Ramsey and Mitchell Transport were to assign their contractual rights to Plaintiffs, perhaps Plaintiffs would have a viable cause of action for attorney fees against Defendant Hannover. Neither of these situations exist here.

The key problem with allowing Plaintiffs' claim for attorney fees to remain in the case now is the fact that, absent garnishment or assignment of rights, Defendants Ramsey and Mitchell Transport still retain the ability to seek recovery from Defendant Hannover, and Defendant Hannover could be obligated to pay both Plaintiffs and Defendants Ramsey/Mitchell Transport. See *Sours v. Am. States Ins. Co.*, 986 F.2d 1429, 1993 WL 53609, at *3 (10th Cir.1993). Plaintiffs' claim is premature, and the court dismisses it without prejudice.

## C. Punitive Damages

Defendants' final argument is that Plaintiffs have insufficient evidence to support their punitive damages claim. They ask the court to make evidentiary rulings at the summary judgment stage and find that Plaintiffs' evidence supporting their punitive damages claim is irrelevant and inadmissible. The court declines to do so, and denies summary judgment as to Plaintiffs' claim.

■ "In order to recover punitive damages, plaintiff must prove, by clear and convincing evidence in the initial phase of the trial, that defendant acted toward plaintiff with willful conduct, wanton conduct, fraud or malice." *Powell v. Havner*, 817 F.Supp. 90, 93 (D.Kan.1993) (citing K.S.A. § 60–3702(c)). "In order to prove defendant's conduct was wanton, plaintiff must show that the defendant's actions were performed with a realization of the imminence of danger and a reckless disregard or complete indifference to the proba-

ble consequences of the actions." *Id.* (citations omitted) (applying Kansas law). " 'Wantonness' refers to the mental attitude of the wrongdoer rather than a particular act of negligence." *Gould v. Taco Bell,* 239 Kan. 564, 722 P.2d 511, 518 (1986). A punitive damages claim will survive a motion for summary judgment if a reasonable juror could find that the evidence clearly and convincingly shows that the defendant acted in a wanton matter. *Rios v. Bigler,* 847 F.Supp. 1538, 1548 (D.Kan.1994) (citations omitted) (applying Kansas law).

Plaintiffs' evidence supporting their punitive damages claim, in part, is as follows. Plaintiffs offer evidence suggesting that Defendant Ramsey was aware of the importance of safety in driving his tractor-trailer, yet repeatedly exceeded the speed limit. Defendant Ramsey acquired a radar detector to alert him to the presence of police officers. He admitted in his deposition that between one and five times, he had consumed alcohol before driving a tractor-trailer. In March 2000, while driving a truck for Mitchell Transport, Defendant Ramsey was arrested for driving under the influence. Mitchell Transport did not fire Defendant Ramsey, but Ramsey resigned two days later. Plaintiffs also offer evidence indicating that Mitchell Transport received a letter from the Federal Highway Administration in September 1999, finding its operation deficient with respect to the safety regulation limiting hours of service of drivers. In addition, according to Plaintiffs' evidence, Mitchell Transport's safety director is not qualified for the position.

Defendants argue that most of this evidence is irrelevant and inadmissible. The record is insufficient to rule at this stage whether Plaintiffs' punitive damages evidence is admissible. Because there are genuine issues of material fact with re-

spect to whether Defendants' conduct was wanton, the court denies summary judgment with respect to Plaintiffs' claim for punitive damages.

IT IS, THEREFORE, BY THE COURT ORDERED that Defendants' motion for partial summary judgment (Doc. 108) is granted in part and denied in part. Specifically, the court grants Defendants' motion with respect to Plaintiffs' § 14704(a)(2) claim and claims for attorney fees, and denies the motion with respect to Plaintiffs' claim for punitive damages.

Copies of this order shall be transmitted to counsel of record.

**IT IS SO ORDERED.**